## No. 13,684.

### LEZIN A. BECNEL VS. THE ASHTON PLANTATION CO., LIMITED.

#### SYLLABUS.

1. The defendant company engaged and employed the plaintiff, as manager and superintendent of its plantation, and the railroad connected therewith, for the term of ten years, to begin on January 1st, 1897. The plaintiff was to be paid for his services annually the sum of twenty-five hundred dollars. The contract stipulated that the company could, at any time, terminate the contract, and be released from its obligations, by going into liquidation. The company went into liquidation on the 3rd of February, 1899 ; the plaintiff, as a stockholder, voting therefor. The plaintiff sued for salary for the whole year.

*Held*—The plaintiff's ground is not well founded. He was not sent away by the defendant; his employment ended under the terms of the contract. There is no question of reconduction involved. The contract authorized the split-ting of the year's employment into parts, and under the exercise of this right the plaintiff could only claim salary from the beginning of the year up to the date of liquidation.

Becnel vs. Plantation Co., Ltd.

A PPEAL from the Civil District Court, Parish of Orleans—
  *Theard, J.*

*Samuel L. Gilmore* and *Clegg & Quintero* for Plaintiff, Appellee.

*Robert G. Dugue* for Defendants, Appellants.

The opinion of the court was delivered by NICHOLLS, C. J.

## STATEMENT OF THE CASE.

NICHOLLS, C. J.   The plaintiff asks judgment against the defendant company for seven thousand two hundred and eighty-five dollars upon allegations that on the 22nd day of January, 1897, he entered into a written contract with said company, by the terms of which he was engaged and employed as manager and superintendent of the Ashton Plantation Company, Limited, and of the Hahnville and Boutte Railroad Company, for the term of ten years beginning on the first day of January, 1897; that under the terms of said contract petitioner was to be paid for his services, annually, the sum of $2500.00, and upon the payment by the Ashton Plantation Company, Limited, of a debt of $60,000.00, which it was represented to petitioner was due by said company to one A. H. Morris, petitioner was to receive as additional salary one-sixth of the profits made yearly by the said Ashton Plantation Company, Limited, in addition to the sum of $2500.00 aforesaid.

That he duly entered into and properly performed his duties as manager and superintendent of the Ashton Plantation Company, Limited, and of the Hahnville and Boutte Railroad Company, on or about the first day of January, 1897, and continued to properly discharge and perform his said duties up to the 3rd day of February, 1899, when, without previous notice to him, he was informed that said contract was terminated and his services no longer required. That during the time that he was performing the duties of manager and superintendent as aforesaid, to-wit: during the sugar crop season of 1897-1898, the Ashton Plantation Company, Limited, under his management, earned an amount of money sufficient to pay a cash dividend of $30,000.00, without, however, any deduction being made from its earnings during said season of any part of said debt of $60,000.00, which, at the date of petitioner's contract, it was represented to him, was due by the company to said A. H. Morris; that, on or about Jan-

uary 4th, 1898, from a written acknowledgment of A. H. Morris, peti-
tioner learned that said debt of $60,000.00, which, prior to that time,
petitioner supposed was due by said company to said A. H. Morris,
was not due by said company to A. H. Morris, and that therefore peti-
tioner was entitled, under his contract, to one-sixth of said sum of
$30,000.00 as additional salary for the year 1897; that petitioner, be-
lieving that the officers of and parties in interest in said Ashton Plan-
tation Company, Limited, would deal with him in good faith and pro-
vide for the payment of his said one-sixth of the profits of said Ashton
Plantation Company, Limited, for the year 1897, out of subsequent
profits or other assets, did not press his claim or make demand for the
payment of his one-sixth of said sum of $30,000.00, viz, $5000.00, con-
tinued to discharge and perform his duties as manager and superin-
tendent of said Ashton Plantation Company, Limited, and of the Hahn-
ville and Boutte Railroad Company, without, however, in any way or
manner, or by any act, waiving or abandoning his right to said' sum of
$5000.00, and that said sum of $5000.00 is now wholly due and owing
to him by said Ashton Plantation Company, Limited; that in addition
to said sum of $5000.00, one-sixth of the profits of the said company
for the year 1897, said company is indebted to petitioner in the sum
of $2185.12, being balance of his annual salary for the year 1899.

That, although, according to said contract, said Ashton Plantation
Company, Limited, had the right to relieve itself from all future obli-
gations assumed by said company under said contract, said contract
provided, for the benefit of petitioner, an annual and indivisible salary
of $2500.00 per annum; that said Ashton Plantation Company, Lim-
ited, is indebted unto him in the further sum of $100.00, being an
amount over-paid on account of the "Lone Star Store," resulting from
an erroneous credit allowed to petitioner of $100.00, instead of the
sum of $200.00.

That, on or about the 3rd day of February, 1899, said Ashton Plan-
tation Company, Limited, went into liquidation under its charter, and
petitioner, being offered appointment as one of the liquidators thereof,
accepted the same with the object of assisting said company in the
liquidation of its affairs and protecting the creditors in their rights,
and under the belief that said company and its liquidators would act
with petitioner in good faith. That, on the 28th day of March, 1899,
petitioner, learning for the first time that his claim for the amount
due him as aforesaid would not be acknowledged by the liquidators of

said company, and being dissatisfied with the course of the liquidation, in so far as other creditors are concerned, resigned his position; and that the liquidators of said company, now continuing to discharge their functions as such, are Charles E. Rice and James Legendre of New Orleans.

That said Charles E. Rice and James Legendre, liquidators as aforesaid, refuse to acknowledge or pay said sum of $7285.12 due petitioner as aforesaid, all of which said sum is now due and owing to petitioner.

The defendants first pleaded the general issue. They admitted that plaintiff was employed by the Ashton Plantation Company, Limited, now in liquidation, under a written contract; that he acted under that employment until the 3rd of February, 1899; that the company went into liquidation on that day, and that plaintiff was appointed as one of the liquidators, and accepted the appointment, which he afterwards resigned, on or about March 28th, 1899. They specially denied, however, that they owed him anything; that he was discharged without previous notice, or that notice was necessary; that the company earned enough to pay, or did pay, a dividend of $30,000.00, or any dividend at all, properly called; that the crops of 1897 and 1898, or either of them, realized any profits, or, if they did, that the plaintiff was entitled to any part thereof; that he never ascertained the debt of $60,000.00, alluded to in his contract, was not due, and they denied that the company was bound to pay him "an annual and indivisible salary of $2500.00 per annum." They averred that they properly refused to recognize his right to any compensation after the 3rd of February, 1899, the day the company went into liquidation, because it had been stipulated, in the contract of employment, that such liquidation would terminate the contract and would release the parties from all obligations thereunder, and for the other reasons in the answer stated. That the plaintiff had ample notice, long before the 3rd of February, 1899, that his services would have to be dispensed with at any moment; that besides being employed as superintendent and manager, he was a stockholder and director of the company, and had the almost exclusive, unlimited control, direction and custody since the day he was employed of the Ashton plantation, in the parish of St. Charles (the main asset of the company), of the railroad operated in connection therewith, of cern, which were kept by him, or under his direction, in the parish of St. Charles; knew he had utterly exhausted the resources of the company, making it impossible for it to procure the necessary funds with

the finances required to operate the whole, and of the books of the con-
which to continue its business, and he, himself, as a director and stock-
holder, finally voted to put the company in liquidation, and was made
one of the liquidators thereof.

That while it was true the company appears to have declared a div-
idend of $30,000.00, it only declared it, in the city of New Orleans,
upon representations of the plaintiff, supported by an incomplete state-
ment of the condition of its affairs which he furnished for the purpose,
and with the aid of his vote as a director, he being aware at the time
that the $30,000.00 were to be paid on account of the debt of $60,000.00
already mentioned. He knew also that the dividend, or nearly the
whole of it, was paid on account of that debt, and that the remainder
of the debt, more than $30,000.00, was still due and unpaid; that the
debt was, in truth and in fact, the company's debt. The company, its
directors and stockholders, had always considered and treated it as such,
and had assumed and agreed to pay it, with the profits of the concern,
in the shape of dividends, all with the knowledge and consent of the
plaintiff; that the plaintiff was, in no event, to have a share in any of
the profits of the company, except those in excess of $60,000.00, which
the company might derive from its agricultural operations, under the
plaintiff's management, and there had been no such profits, or excess
profits—no profits in fact—of any kind, as stated.

That respondents never heard of the claim of $100.00 on account of
the Lone Star Store, before they saw it mentioned in plaintiff's peti-
tion, and that they did not know the cause of his alleged dissatisfaction
with the course of the liquidation, which had been carried on with
strict justice and impartiality to all creditors and other parties in
interest, unless it be their refusal to entertain his unjust claim against
the company; finally, that the plaintiff was estopped from contesting
or impugning the validity of any of the acts and doings of the corpora-
tion, particularly those in which he, himself, may have participated
as a director, as an employé or as one of the liquidators of its affairs.

They therefore prayed that his suit be dismissed and his demand
rejected with costs, and reserving the right to sue him for any amounts
he might owe to the company, they prayed for general relief.

Defendants subsequently filed an amended answer, in which they
averred that, subsequently to the date of the plaintiff's contract, the
claim of $60,000.00, referred to in the original answer, was found to
be in a different shape from what the holder of the claim and all the

parties to the contract of employment had believed it to be; that the plaintiff, upon being informed of the discovery, and upon being advised of the exact condition and situation of the matter, agreed not to claim any of the profits of the company, as salary or otherwise, until he should have earned $60,000.00 for the company, and then only one-sixth of the excess of said profits over and above the said sum of $60,000.00, and he expressly admitted that he was not entitled to demand more, under his contract, whether the debt of $60,000.00 was or was not due by the company. That respondent had discovered, since the filing of their original answer, that the plaintiff had made or caused to be made entries in the books of the company, tending to show that it made profits on the crop of 1897, that it owes the plaintiff the two items of $5000.00 and $2185.12, which he claimed in this suit, and that the debt of $60,000.00, heretofore mentioned, no longer subsisted; that the said entries were made without the knowledge or consent of the defendants, or of the Ashton Plantation Company, Limited, and they are illegal and improper, and respondents expressly repudiated them, as well as any and all other erroneous, improper or illegal entries that may have been made in the books by the plaintiff, or under his direction. Respondents further averred that it was impossible, owing to the condition of the books, to state at present whether or not the plaintiff owed anything to the community. They had discovered, however, since the filing of their original answer, that the company appeared to owe him the $100.00 which was claimed in his petition to be due on account of the Lone Star Store. But the company was insolvent, and hence if he was a creditor, he would only be entitled to receive the same *pro rata* as the other ordinary creditors, to whom a dividend of fifty-two cents on the dollar was being paid now. No one could then say what further dividend they would receive, but in order that respondents might be relieved from the costs to be hereafter incurred in this suit, they tendered and deposited, under express reservation of their right to sue the plaintiff for anything he might owe the company, a sum of one hundred dollars, more than enough to cover the entire *pro rata* to which he would be entitled as an ordinary creditor for $116.00, this last amount being made up of the sum of one hundred dollars, interest thereon at five per cent. from April 1st, 1899, to date (one dollar), and fourteen dollars which the plaintiff had paid for costs in this suit to date. Respondents therefore prayed that their supplemental and amended answer be filed.

The court rendered judgment in favor of the plaintiff for two thousand two hundred and eighty-five dollars and twelve cents. The defendants appealed.

Plaintiff prayed in the Supreme Court that the judgment of the District Court be amended in his favor for an additional sum of five thousand dollars, with legal interest from judicial demand, as being one-sixth of the profits of the Ashton Plantation Company for the year 1897.

## OPINION.

The plaintiff and the Ashton Plantation Company, Limited, entered into a contract together, by which the company engaged and employed plaintiff for the term of ten years, to begin January 1st, 1897, as manager and superintendent of the Ashton Plantation Company, Limited, and of the Hahnville and Boutte Railroad Company. The plaintiff was to be paid for his services, annually, the sum of twenty-five hundred dollars, and upon the payment by the Ashton Plantation Company, Limited, of the debt of sixty thousand dollars due by it to A. H. Morris, the plaintiff was to receive as additional salary one-sixth of the profits made yearly by the Ashton Plantation Company, Limited, in addition to the sum of twenty-five hundred dollars.

In order to determine what the rights of the plaintiff would be in regard to the profits, the parties defined and agreed upon what should, for the purposes of the contract, constitute the annual expenses of the plantation.

Appended to the contract was a statement of the resources and liabilities of the company on January 31st, 1897, same being taken from the books as kept on the plantation on the date mentioned, and which the parties accepted and approved. By the contract, "it was agreed that it should terminate and come to an end, and the parties shall be released from all obligations upon the liquidation of the Ashton Plantation Company, Limited."

On the statement annexed to the contract the corporation is put down as being debtor of *A. H. Morris*, to the amount of *sixty thousand dollars*. This is the debt of sixty thousand dollars referred to in the contract. The plantation and its appurtenances do not figure on this statement as assets of the company. Four thousand one hundred and fifty-four barrels (1,418,985 pounds) of sugar, unsold, estimated at five cents net, amounting to $42,569.55, and thirds (sugars) in process

(about 130,000 pounds sugar), estimated at two cents net, amounting to $32,000.00, do figure as assets on the statement. The two amounts aggregate the sum of $45,769.00. These sugars were evidently sugars of the crop of 1896, made before plaintiff's contract commenced. No mention is made in the statement of the stubble and seed cane and corn brought over into the year 1897 from the crop of 1896.

On the 4th of January, 1898, Mr. A. H. Morris, who appeared on the statement annexed to the contract between the plaintiff and the company as a creditor of the latter wrote the following letter to the plaintiff:

"Whenever a property begins to earn money it becomes interesting. Such is the case with Ashton. I have therefore been investigating the details of the Ashton company and I have made a discovery to your advantage. The Ashton Plantation Company does not owe me a debt. Ninety-nine shares of the stock in the name of Charles E. Rice and 99 shares of stock in the name of Morris Bein owe me $300 a share before such stock belongs to the holder of record. Therefore, there is no interest for the Ashton Plantation Company to pay, and you are so much ahead of the game. The profits of Ashton must be divided in the shape of dividends to stockholders, and when you have declared $60,000 in dividends, then after that you will receive one-sixth of the profits as per our agreement."

On the 20th of January, 1898, Mr. Morris wrote the following letter to the plaintiff:

"Please find enclosed my check to your order for $2400, which amount you paid me of interest on a non-existent debt. I trust that you are well and that your crop has come up to your expectations."

On the 12th of April, 1898, there was a meeting of the board of directors of the company, to which the plaintiff submitted a report dated March 20th, 1898, styled "Comparative Statement, Liabilities and Assets of the Ashton Plantation Company, Limited. 2-1-97—2-15-98. Basis, all amounts due and available assets, excluding value plantation field assets, tools, implements, mules, etc." The statement opened with what is declared to be the assets and liabilities of 1897.

This statement shows excess of assets over liabilities of $12,173.

Then follows a statement of assets and liabilities of 1898. This shows an excess of assets over liabilities of $42,847.29.

The debt due to A. H. Morris does not appear on these statements.

On motion made and seconded the report was received and approved.

On motion made and seconded it was then resolved that a dividend of fifty per cent. on $60,000, represented by 600 shares of capital stock of this company, say $30,000, be and the same is hereby·declared and made payable on demand.'

The minutes of a meeting of a board of directors held on February 3rd, 1899 (the plaintiff, as a director, being present), recite that Mr. Becnel, the manager of the Ashton plantation, reported the inability to secure advances to make the crops of the Ashton plantation for the year 1899, also his inability to secure a loan sufficient to pay the debts of the company, which amounts, for the year 1898, to about the sum of $132,000. He reported that the seed cane on said plantation was decaying and would suffer great injury if not planted within the next three weeks, which can not be done for want of funds. He further reported that there are about three hundred and fifty acres of cane standing in the fields, which must be cut and hauled away; that the estimated cost of this work is ten thousand dollars. He reported the danger of overflow from the rapid rise of the Mississippi river, and the probable destruction of the crops from said cause, whereupon Mr. Sully presented the following resolution, which was duly seconded:

"Resolved, that the Ashton plantation, its land and improvements, together with one hundred and ninety-three shares of stock of the Hahnville and Boutte Railroad Company, owned by this company, be sold at private sale for cash, for not less than sixty thousand dollars, and Charles E. Rice be and he is hereby, as president, authorized to execute all deeds and transfers necessary to the full conveyance of said lands and shares of stock."

At a meeting the same day of the stockholders (the plaintiff being present and voting), Mr. Rice, the president, stated that, in conformity to a resolution of the board of directors adopted that day, he had sold and conveyed to Emile Legendre, for the sum of sixty thousand dollars, cash, the Ashton plantation, an asset of the company, together with 193 shares of stock of the Hahnville and Boutte Railroad Company.

On motion of Mr. Sully, seconded and adopted, it was resolved that the said sale be approved and ratified by the stockholders. Mr. Simmons then presented the following resolution, which was seconded and adopted:

"Resolved, that the Ashton Plantation Company, Limited, go into liquidation; that its affairs be wound up by three commissioners, in

conformity with Article 6 of its charter, and that Charles E. Rice, James Legendre and L. A. Becnel (plaintiff) be and they are hereby appointed commissioners to liquidate its affairs, and that the assets of the company, including the proceeds of sale of the Ashton plantation and shares of stock, be turned over to said commissioners for distribution among the creditors of the company."

The plaintiff accepted the position of commissioner, acted for some time as such and then resigned. This suit followed.

Plaintiff's claim is for:

One-sixth (⅙) of dividends declared from earnings of 1897-
1898 .......................................... $5000 00
For balance due on salary for the year 1897-1898.......... 2185 12
For amount unpaid account of purchases made by the Lone
Star Store, the property of L. A. Becnel.............. 100 00

Total ........................................ $7285 12

Defendant concedes the indebtedness claimed of $100, but denies owing the balance.

The position taken by the plaintiff is thus stated in the brief filed on his behalf:

"It is quite clear that, under the contract, the plantation company could, at any time, by its liquidation terminate the contract and be relieved from all obligations arising under the contract, subsequent to the liquidation, as far as the plaintiff is concerned, but it is equally clear that it could not, in case of liquidation, release the company from debts accrued, or from obligations complete at the date of the liquidation. The contract declares that the plaintiff was "to be paid for his services *annually* the sum of twenty-five hundred dollars." The fact of the liquidation of the company after the beginning, under the contract, of a new year, and after plaintiff had been allowed to render services during the early part of that new year, did not release the company from the obligations to pay the annual salary for that year. Contracts for the

employment of managers or overseers of plantations are, in this State, by the year. The Supreme Court, in Miller vs. Gidiere, 36 Ann. 203, says: 'Overseers are not usually employed from month to month or by the month. Our agriculture requires them through the year.'

"Again, in the case of Alba vs. Moriarty & Co., 36 Ann. 682, the Supreme Court decided that, 'Plaintiff, by the terms of the letter evidencing the contract, was employed not for one year, but at eighteen hundred dollars per year. It was therefore a continuing contract from year to year until terminated by mutual consent, or by timely notice given by either party at or before the expiration of the year.'"

Plaintiff then refers to the cases of Lalande vs. Aldrich, 41 Ann. 308, and Long vs. Kee, 42 Ann. 899, and to the declaration made by the Supreme Court in the latter case that the right of setting aside a contract for a manager's services must "be exercised reasonably and after due notice and at the beginning of some designated year."

He then contends that "though the company could end the contract by liquidation at any time, liquidation did not give it the right at any time to divide the annual salary or to repudiate any part of it. At the end of each year the salary of that year was of course all the salary due, and liquidation at that time not only avoided the contract, but left plaintiff with no claim for salary. If the company allowed a new year to begin and plaintiff's right to a new annual sum to attach liquidation before the end of that year dissolved the contract, but did not leave plaintiff without right to his salary for the year. Termination of the contract is one thing; division of annual salary for the purpose of release from its full payment, is another. In order to have released the company from its debt for the plaintiff's salary for 1899, it was incumbent upon the company to have gone into liquidation prior to the 1st of January, 1899, the compensation, under the contract, not being at the rate of so many dollars a month, but at a fixed sum per year."

Before proceeding to an examination of the various contentions of the plaintiff, it may be well to say at once, that there is no complaint in plaintiff's petition that the right of liquidation was inopportunely or unreasonably exercised. The evidence shows that the liquidation was resolved upon at a meeting of stockholders by a unanimous vote of the stockholders (the plaintiff participating and voting). It further shows that this action was the result of a report made by the plaintiff to the company, from which it appeared that it was impossible, for want of means, for the company to have attempted to continue its operations any further.

This is not, as was the Alba vs. Moriarty case, a suit brought under the provisions of Article 2748 of the Civil Code, which declares that, "if, without any serious ground of complaint, a man should send away a laborer, whose services he had hired for a certain time, before that time has expired, he shall be bound to pay such laborer the whole of the salaries which he would have been entitled to receive had the full term of his services arrived"; nor is it a case as was Madden vs. Jacobs, where the employer had, of his own volition, without the consent of the party employed, elected to go out of business, and simply by its own will terminate its existing obligations to others. No question is involved here of the "discharge" of an employé without cause before the expiration of the period of his term of service, nor is it pretended that the company, *quoad* the plaintiff, went out of business without his consent and concurrence. Plaintiff was not "sent away" by the company. Plaintiff's employment terminated by the effect of the exercise by the company of the right of going into liquidation at any time—a right consented to by the plaintiff by the exact terms of the contract on which he has declared, and exercised, as we have seen, on his own representations and with his consent—his consent not only evidenced by the contract, but by his active concurrence at the moment of the vote for liquidation.

The plaintiff refers to his contract as being a ten-year "contract with annual stops and beginnings," but the mention of ten years as the period of plaintiff's employment is limited and qualified by the subsequent clause: that it would terminate at any time by the company's going into liquidation. The contract, so far as the company was concerned, was for ten years, less such time as might be deducted as the result of the liquidation of the company. In view of the fact that it was expressly agreed that the contract could be made to *terminate at any time,* it can not be asserted that it had in view a separate contract of employment for each of the ten years. But granting that there was a contract separately for each of the ten years following its date, it was expressly stipulated that any one of the contracts could be split or divided into one for a shorter period by terminating the contract for that year. There was no time stipulated at which the right of liquidation should be exercised. It could be exercised *at any time,* and when it was exercised it was the result of conditions which made the liquidation necessary.

If we suppose that at the time of the vote being taken for the liqui-

dation of the company plaintiff had been called distinctively *as an employe of the company,* and asked whether he consented to the termination of his contract, and he had stated that he did give an absolute consent that this should be done, he thereafter would not be permitted to assert that, though the contract had been by mutual agreement ended, the company was under obligation to pay for services not yet rendered by the plaintiff, but which were by the contract to be thereafter rendered. The consent of the plaintiff, given at the time of the creation of the contract, was as binding upon him as would have been a direct, immediate consent given at the time for the vote for liquidation. In this case, there was both original and subsequent consent. There was unquestionably a completed "contract" between the plaintiff and the company, which anticipated and was intended by both parties to extend over a period of ten years, but it was none the less an executory contract so far as the plaintiff was concerned. The salary agreed upon was in consideration of services to be performed by him; it was not in contemplation of the parties that the plaintiff should charge or the defendant pay for services not rendered.

Articles 1898 and 1899 of the Civil Code declare "that where the cause or consideration of the contract really exists at the time of the making of it, but afterwards fails, it will not affect the contract if all that was intended by the parties be carried into effect at the time."

"The destruction of property sold after the sale is a case governed by this rule, but if the contract consists of several successive obligations to be performed at different times and the equivalent is not given in advance for the whole, but is either expressly or imperfectly promised to be given at future periods, then, if the cause of the contract corresponding to either of the successive obligations should fail, the obligation depending on it will cease also."

Article 1890 of the Code declares that "the contract is considered without cause when the consideration for making it was something which, in contemplation of parties, was thereafter expected to exist or take place, and which did not take place or exist."

The rights and obligations of the parties to this controversy rest not only upon law, but upon contract. It was expressly foreseen and anticipated that what the parties agreed to might, from circumstances, become impossible of execution, and it was therefore provided that the contract might be terminated by the liquidation of the company. The question of "reconduction" does not enter into this case.

The going of the company into liquidation left it liable to the plaintiff for the portion and proportion of the salary for 1899 due him for services actually rendered in that year. He was in service from the 1st of January, 1899, to the 3rd of February. Asserting that the company owes him salary for the whole year, $2500, he claims there is due him still a balance thereon of two thousand one hundred and eighty-five dollars of that salary. He must therefore have received payment of the difference on account. The court rendered judgment in his favor for two thousand two hundred and eighty-five dollars and twelve cents, of which one hundred dollars was evidently upon his admitted claim of one hundred dollars on the Lone Star Store account.

No mention is made in the judgment of plaintiff's claim for profits. The court evidently rejected that claim, and we think it did so properly. The parties evidently contemplated that the profits, in which the plaintiff was to share after the payment of the debt to A. H. Morris, were the profits to be earned by the plantation after the year 1896, and while the plantation was under the management of the plaintiff. As we read the evidence, the plantation made no profits during either of the years 1897 and 1898. On the contrary, the operations of the plantation in each and both of these years resulted in losses.

It is true that a certain amount of money was paid over in 1898 to the stockholders as a so-called dividend, but the amount so turned over was not the result of any moneys accruing to the plantation as profits earned by the plantation in the crop operations of 1897. They sprang from conditions which arose entirely outside of and independent of the contract sued on between the plaintiff and the defendant, and which he can not make to enure to his benefit, as those amounts were not earned through any service rendered by him under the contract. The amount so paid was distributed by him in full to the stockholders without any claim being made by him to the company that he was entitled to a share thereon. It is possible that the turning over of this money instead of holding it for use was an injudicious step, as matters turned out, but that question is not before the court, and whether judicious or injudicious, it met, at the time, with plaintiff's concurrence. Appellants, in their brief, ask "that the judgment appealed from may be reversed, and that the amount allowed the plaintiff may be reduced to one hundred dollars, payable in due course of liquidation, with costs up to the 15th of June, 1899, the date of their tender and deposit of the amount due the plaintiff, and that the plaintiff be condemned to pay the costs of both courts, from and after that date."

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiff do have judgment against the defendnants herein for the sum of one hundred dollars, with legal interest from judicial demand until paid, the said amount to be paid by the defendants in due course of administration.

It is further ordered, adjudged and decreed that plaintiff's demands, except for the said amount, be and the same are hereby rejected and dismissed.

It is further ordered and decreed that the defendants pay the costs of court incurred up to and including the 15th of June, 1899, and that the plaintiff pay the costs incurred in both courts, from and after that date.

Rehearing refused.

PROVOSTY, J., takes no part.